IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ROXANA RECIO, | ) | CASE NO. 8:06CV361 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM |
| v. | ) | AND ORDER |
| | ) | |
| CREIGHTON UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on the Defendant Creighton University's Motion for Summary Judgment (Filing No. 45). For the reasons stated below, the Defendant's Motion will be granted.

**PROCEDURAL BACKGROUND**

The Defendant, Creighton University ("Creighton"), is a private university in Omaha, Nebraska, operating several undergraduate, graduate and professional colleges and schools, including a College of Arts and Sciences. One of the departments in that College is the Department of Modern Languages and Literatures (the "Department"). (Affidavit of Greg Jahn, Vice-President and General Counsel of Creighton University ("Jahn Aff."), Filing No. 48-1, ¶ 3). The Plaintiff, Roxana Recio ("Recio"), is an Associate Professor of Spanish in the Department. (Complaint, Filing No. 1, ¶ 3; Answer, Filing No. 10, ¶ 3).

In early February 2004, Recio lodged a written complaint about Dr. Michelle Evers ("Evers"), a non-tenured Creighton faculty member. (Report of University Sexual Harassment Committee, April 22, 2004 ("Committee Report"), Jahn Aff., Ex. A, p. 2). On February 18, 2004, Evers submitted a letter to Timothy Austin, Dean of Creighton's College of Arts and Sciences, informing him of "inappropriate and offensive" communications received from Recio. (Letter from Michelle Evers to Timothy Austin dated February 18,

2004, Deposition of Michelle Evers Warren ("Evers Depo."), Ex. 83, Filing No. 48-13).  On March 17, 2004, Evers filed a formal complaint of sexual harassment against Recio. (Letter from Michelle Evers to Kathy Taggart dated March 17, 2004, Deposition of Ivelissa Santiago-Stommes ("Santiago-Stommes Depo."), Ex. 67, Filing No. 48-9).  Essentially, Evers alleged that in 2001, shortly after Evers interviewed for employment as a faculty member at Creighton, Recio sent her a series of "obsessive, stalker-like" e-mail communications and made "inappropriate advances . . . of a strong sexual nature."  (*Id.*). When Evers discontinued e-mail contact with Recio, Recio "repeatedly and relentlessly tried to re-initiate contact," according to Evers.  (*Id.*).  Evers perceived Recio's complaint to be in retaliation for Evers's refusal to communicate with Recio.  (Committee Report, p. 2).

In accordance with Creighton's policies and procedures, a four-person Sexual Harassment Committee (the "Committee") heard evidence and, on April 22, 2004, issued a fourteen-page report and recommendation to Creighton's president, Rev. John Schlegel, S.J. ("Father Schlegel").  The Committee recommended that Recio's employment be terminated immediately, due to Recio's "pattern of obsessive, aggressive and retaliatory behavior toward Dr. Evers," and Recio's "long-standing unprofessional behavior" contributing to "a dysfunctional and hostile academic environment for the entire department that continues constantly to be addressed by the administration."  (Jahn Aff., ¶¶ 5, 7; Committee Report, p. 14).

Fr. Schlegel reviewed the Committee's recommendation, and, on May 12, 2004, determined that the Committee's conclusions had "substantial merit."  Fr. Schlegel noted that the "evidence appears to be quite strong" that Recio "created and continues to create

a very hostile working environment for all members of the Department." He further noted that members of the Department "describe her as 'obsessive, a bully, aggressive, irrational, demanding, creates conflict, stalking, retaliates, rages, verbal violence, explosive, etc.'" He specifically agreed with the Committee's conclusion that Recio "displays a pattern of obsessive, aggressive behavior," and that Recio's complaint against Evers had "the classic form of a preemptive strike." (Letter from John Schlegel, S.J. to Committee Members dated May 12, 2004, Deposition of Timothy Austin ("Austin Depo."), Ex. 13, Filing No. 48-6).

Yet, Fr. Schlegel declined to terminate Recio's employment. Instead, he concluded that "[t]his case . . . is much more than a sexual harassment case," and ordered that Recio be placed on probation for one year, with five conditions for her continued employment: (1) no communication or contact with Evers; (2) no statements to others about Evers; (3) a program of psychological counseling at her own cost, approved by the Dean; (4) an educational program, also approved by the Dean, "dealing with issues of communication, appropriate interaction with others, teamwork, etc."; and (5) close monitoring and documentation of her conduct in the classroom, attendance at classes, scheduling and maintaining of office hours for students, and her interactions with faculty throughout the year of probation. (*Id.*).

On July 14, 2004, Recio filed a charge of employment discrimination with the Nebraska Equal Opportunity Commission ("NEOC"), alleging that Creighton's imposition of probation was based on her national origin, *i.e.*, Spanish. (2004 Nebraska Equal Opportunity Commission and EEOC Complaint, Deposition of Roxana Recio ("Recio Depo."), Ex. 35, Filing No. 48-3). The NEOC found no reasonable cause for Recio's

3

complaint, and concluded that the "discipline was based on evidence and witness testimony that [Recio] created a hostile, intimidating work environment, not only for the colleague who complained, but for her department as a whole.  There is no evidence to show that the level of discipline was based on [Recio's] national origin."  (Commission Determinations, Recio Depo., Ex. 36, Filing No. 48-3, p. 2).

On May 10, 2005, Recio filed a second charge with the NEOC, alleging that Creighton had retaliated against her for the filing of the first NEOC charge.  (2005 Nebraska Equal Opportunity Commission and EEOC Complaint, Recio Depo., Ex. 37, Filing No. 48-3).  On May 3, 2006, the NEOC terminated the processing of the charge and, at Recio's request, issued a right-to-sue letter.  (Complaint, Filing No. 1, Ex. A).

Recio filed this action on May 10, 2006, alleging that Creighton retaliated against her for the filing of the July 2004 charge of discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII").  (Complaint, Filing No. 1).  The Complaint alleged acts of retaliation[1] of a continuing nature, including but not limited to thirteen acts preceding the filing of her NEOC charge of retaliation, and eight acts following the filing of her NEOC charge of retaliation.  The twenty-one alleged acts of retaliation are:

*(Preceding filing of NEOC retaliation charge)*

1. Notification that her one-year probationary status would end one year after she began the required counseling sessions, rather than on May 31, 2005.

---

[1] Recio's Complaint did not challenge the process Creighton used that resulted in her discipline for alleged misconduct, nor did the Complaint raise any issue of discrimination based on Recio's national origin.

2. Notification that her teaching schedule would include classes on Mondays, Wednesdays and Fridays.

3. "Provocative conduct" by Evers, uncorrected by Creighton following complaint by Recio.

4. Shunning by other faculty members and a "hostile work environment" promoted and condoned by Creighton.

5. Denial of "privileges and courtesies commensurate with her position and enjoyed by comparators."

6. Problems with temperature control in her office.

7. Direction by the Dean to attend a workshop in Sioux City, Iowa, when Recio planned to be in Spain on Christmas break.

8. A requirement that she receive psychological counseling at her own expense into the fall of 2005, although she was not in need of such counseling.

9. A requirement that she acknowledge her probationary period extending into the 2005–06 school year as a condition of her employment contract.

10. Denial of raises and promotions commensurate with her standing.

11. Denial of teaching assignments in advanced courses and denial of the opportunity to teach summer classes.

12. Discouraging students from selecting her as a faculty advisor.

13. Denial of opportunities granted to other faculty members, such as participating in a program of study in Spain.

*(Following filing of NEOC retaliation charge)*

14. Failure to respond to requests for assistance with actions such as ordering textbooks and obtaining reimbursement for travel expenses.

15. Failure to tape record meetings of the Spanish Department.

16. Failure to ensure that student teaching evaluations remained sealed.

17. Failure to provide comfortable temperatures in Recio's new office space.

18. Requiring that Recio teach classes on Mondays, Wednesdays and Fridays.

19. Failure to allow Recio to teach advanced courses, and to give her opportunities to study in Spain.

20. Failure to seek Recio's input on matters affecting the Spanish Department, shunning her and subjecting her to a hostile work environment.

21. Failing to treat Recio's illness in the same manner as illnesses of other faculty members, particularly with regard to arrangements for substitute teachers.

(Complaint, Filing No. 1, pp. 3–7).

Recio seeks injunctive relief prohibiting Creighton and "its officers, agents, employees, attorneys and assigns and other representatives from engaging in the aforesaid and any other employment policy or practice which discriminates against [Recio] because of her exercising rights afforded to her under Title VII," damages in an amount in excess of $100,000, and other relief. (Complaint, Filing No. 1, pp. 8–9).

Creighton moved for Summary Judgment, and both parties submitted briefs and indexes of evidence in support of their positions.

## STANDARD OF REVIEW

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates no genuine issue of material fact exists and the moving

6

party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Cordry v. Vanderbilt Mortg. & Fin., Inc.*, 445 F.3d 1106, 1109 (8th Cir. 2006) (quoting *Bockelman v. MCI Worldcom, Inc.*, 403 F.3d 528, 531 (8th Cir. 2005)). The proponent of a motion for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The proponent need not, however, negate the opponent's claims or defenses. *Id.* at 324–25.

In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). A "genuine" issue of material fact is more than "some metaphysical doubt as to the material facts." *Id.* at 586.

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id.* at 249–50 (citations omitted).

Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to

secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.*, 477 U.S. at 327.

## THE PARTIES' STATEMENTS OF MATERIAL FACTS

The local rules of this Court require that a moving party "set forth in the brief in support of the motion for summary judgment a separate statement of material facts as to which the moving party contends there is no genuine issue to be tried and that entitle the moving party to judgment as a matter of law." NECivR 56.1(a)(1). "The statement of facts shall consist of <u>short</u> numbered paragraphs, each containing pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials relied upon to support the material facts recited in that paragraph." NECivR 56.1(a)(2) (emphasis in original).

Creighton has complied with the Court's local rules, addressing each of Recio's allegations in exhaustive detail, providing its non-retaliatory rationale for actions taken, with proper references to affidavits, pleadings, discovery responses, deposition testimony, or other materials relied upon in support.

In response, the opposing party is required to "address each numbered paragraph in the movant's statement and, in the case of any disagreement, [the response shall] contain references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials upon which the opposing party relies. <u>Properly referenced material facts in the movant's statement will be deemed admitted unless controverted by the opposing party's response</u>." NECivR 56.1(b)(1) (emphasis in original).

Recio's responsive brief contains a forty-two page "background" narrative. When Recio does address the numbered paragraphs in Creighton's statement of facts, she generally refers the Court to the "explanation in Background, above." (Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment, Filing 49-1, pp. 42–46). Recio argues that there are "literally hundreds of disputed material facts" precluding summary judgment. (*Id.* at 49).

A careful review of the evidence before the Court supports Creighton's non-retaliatory explanations for each of Recio's twenty-one alleged acts of retaliation. The evidence further reveals that many of Recio's complaints are without any basis in fact (*e.g.*, when Recio told Dean Austin that she planned to be in Spain at the time of the Sioux City workshop, the Dean arranged for her to attend a different workshop); others concern events that preceded the filing of her NEOC charges (*e.g.*, Recio's complaints about the temperature in her office began several months before the filing of her NEOC charges); and others concern actions that Creighton took at Recio's request or which she specifically approved (*e.g.*, Recio spends her summers in Spain and is not available to teach summer classes at Creighton; and, in September of 2004, Recio expressed her approval of the course levels assigned to her). The facts of each incident and the evidence supporting Creighton's non-retaliatory reasons for its actions will not be repeated herein, because, as discussed below, I conclude that Recio has not alleged nor suffered any materially adverse employment action.

9

**DISCUSSION**

"As in a Title VII discrimination claim, in a retaliation claim the plaintiff bears the burden of establishing a prima facie case." *Higgins v. Gonzalez*, 481 F.3d 578, 584 (8th Cir. 2007). After *Burlington Northern & Sante Fe Ry. Co. v. White*, 126 S. Ct. 2405 (2006), to establish such a claim, a plaintiff must show: (1) she engaged in protected conduct; (2) a reasonable employee would have found the challenged retaliatory action materially adverse; and (3) the materially adverse action was causally linked to the protected conduct. *Higgins*, 481 F.3d at 589 (citing *Burlington Northern*, 126 S. Ct. at 2415). An allegedly retaliatory action is materially adverse if "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* (quoting *Burlington Northern*, 126 S. Ct. at 2415). "The standard is thus objective, requiring [a court] to consider whether a reasonable employee in the plaintiff's position might have been dissuaded from making a discrimination claim because of the employer's retaliatory actions. *Id.* (citing *Burlington Northern*, 126 S. Ct. at 2412–13). The Supreme Court in *Burlington Northern* emphasized that the adverse action must be "material," because "it is important to separate significant from trivial harms." *Burlington Northern*, 126 S. Ct. at 2415. "Title VII . . . does not set forth 'a general civility code for the American workplace.'" *Id.* (quoting *Oncale v. Sundowner Offshore Serv., Inc.*, 523 U.S. 75, 80 (1998)).

In *Burlington Northern*, the Court held that a plaintiff's thirty-seven day investigatory suspension and reassignment to job duties that were more arduous, dirtier and less prestigious, were employment actions properly submitted to a jury to determine whether they were materially adverse as well as retaliatory. *Id.* at 2417–18. In *Higgins*, the Eighth

Circuit Court found that the plaintiff's claim that she was denied mentoring and supervision did not rise to a materially adverse employment action. *Higgins*, 481 F.3d at 590. "[T]here is nothing to suggest this [personality] conflict created a situation so unbearable or bleak that a reasonable employee would have been dissuaded from complaining about discrimination in such an environment." *Id*. The court also found that the plaintiff's transfer from Rapid City to Pierre, South Dakota, and the inherent inconveniences of such a move, did not rise to the level of a materially adverse employment action, because there was no evidence that the plaintiff's new duties were more difficult, less desirable or less prestigious. *Id.* at 591. Accordingly, in *Higgins*, there was not a question of fact to be submitted to a jury, and the district court's summary judgment for the defendant was affirmed.

*Burlington Northern* and *Higgins* require that this Court look at Recio's situation objectively to determine whether the Defendant's actions would dissuade a reasonable employee in Recio's shoes from bringing a complaint of discrimination. *Id*. (citing *Burlington Northern*, 126 S. Ct. 2405). In other words, are the alleged retaliatory actions so significant that an average employee would refrain from exercising his or her rights under Title VII in order to avoid such adverse consequences? Recio cannot "make her claim based on personality conflicts, bad manners, or petty slights and snubs." *Id.* The record in this case is devoid of evidence that Creighton's actions materially and adversely affected Recio's life such that a reasonable employee in her shoes would be deterred from exercising her rights under Title VII in order to avoid such consequences. While Recio has satisfied the first prong of her prima facie case, *i.e.*, she engaged in protected conduct by the filing of her NEOC claims, she has not met her burden of demonstrating that a

11

reasonable employee would have found the allegedly retaliatory actions to be materially adverse, nor has she met her burden of demonstrating that the allegedly retaliatory actions were causally linked to her protected conduct. Further, Creighton has presented meticulously documented evidence showing non-retaliatory reasons for each of the allegedly adverse actions, and Recio has not come forward with any evidence that Creighton's legitimate, non-retaliatory reasons for its actions were pretexts for retaliation.

## CONCLUSION

Just as Creighton University's President, Fr. Schlegel, concluded that Recio's complaint about co-worker Evers had the "classic form of a preemptive strike" to discredit Evers's allegations of sexual harassment, Recio's claims of retaliation appear to be a preemptive strike to insulate herself from the consequences of her own misconduct. Because the Plaintiff has not shown that she suffered any materially adverse employment action, nor that the Defendant's allegedly retaliatory actions were causally linked to her protected conduct, the Defendant's Motion for Summary Judgment will be granted.

IT IS ORDERED:

1. The Defendant Creighton University's Motion for Summary Judgment (Filing No. 45) is granted; and

2. A separate Judgment will be entered, dismissing the Plaintiff Roxana Recio's Complaint (Filing No. 1) with prejudice.

DATED this 29th day of May, 2007.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge